Eastern District of Kentucky
FILED
FEB 23 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-177-GWU

SHERMAN L. ASHER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to seek judicial review of an administrative decision terminating Supplemental Security Income (SSI) benefits originally awarded in 1992. The case is before the Court on cross-motions for summary judgment.

## STANDARDS APPLICABLE TO TERMINATION DECISIONS

When the issue is the termination of benefits, the Regulations establish the following eight-step test:

1. Is the beneficiary engaging in substantial gainful activity? If so, then the disability will be found to have ended. See 20 CFR Section 404.1594(f)(1).

2. Provided the beneficiary is not engaged in substantial gainful activity, does the beneficiary have an impairment or combination of impairments which meet or equal the severity of impairments in the Listing? If

so, then the disability must be found to continue. See 20 CFR Section 404.1594(f)(2).

3. If the beneficiary does not equal a listing, then the question is whether there has been medical improvement (any decrease in the medical severity of one's impairments, as per 20 CFR 404.1594(b)(1)).

4. Provided medical improvement has occurred, then the question is whether this has produced an increase in the residual functional capacity. If the improvement is not related to the ability to perform work activities, then one proceeds to step 5. If the improvement is related work ability, then one proceeds to step 6. See 20 CFR Section 404.1594(f)(4).

5. Provided there has been no medical improvement or the improvement is not related to work ability, then one must decide whether an exception to the medical improvement standard will apply. If not, then a finding of continuing disability should be made. See 20 CFR Section 404.1594(f)(5).

6. If the medical improvement is found to be related to work ability or if an exception to the medical improvement standard applies, then one considers whether the current impairments in combination are severe. If so, then one proceeds to step 7; if not, the beneficiary is no longer considered disabled. See 20 CFR Section 404.1594(f)(6).

7. If the impairments are found to be severe, then one must assess the beneficiary's ability to engage in substantial gainful activity in accordance with 20 CFR Sec. 404.1561. If found capable of performing past relevant work, then the disability will be found to have ended. Otherwise, one proceeds to step 8. See 20 CFR Section 404.1594(f) (7).

8. Provided the beneficiary cannot perform past relevant work, then one must assess the residual functional capacity and considering the age, education, and past work experience, determine whether other work can be

2

>performed. If so, then the beneficiary is no longer disabled. Otherwise, a finding of continuing disability should be made. See 20 CFR Section 404.1594(f)(8).

The standard for judicial review is whether there is substantial evidence to support the Secretary's decision that the plaintiff's condition has improved to the extent that he can perform substantial gainful activity. Casiano, Jr. v. Heckler, 746 F. 2d 1144 (6th Cir. 1984). The Court must determine from the record upon what conditions the claimant was awarded benefits, and whether there has been any improvement in these conditions. Id. at 1148.

When a termination decision does not involve a contemporaneous analysis of the plaintiff's capacity, as for example when there have been long administrative delays in handling the decision, the agency may not simply refuse to consider medical evidence for the interim period as it must assess the claimant's "current" ability to engage in employment. Difford v. Secretary of Health and Human Services, 910 F. 2d. 1316 (6th Cir. 1990).

## DISCUSSION

The administrative law judge (ALJ) concluded that the plaintiff's continued eligibility for SSI benefits ended in February 1, 2002. (Tr. 21). Due to a number of errors in the proceedings below, the decision can not stand and the case will be remanded for further consideration.

First, the Court will discuss a patent problem not explicitly referenced by the parties. One of the initial steps of the analysis of a termination decision, as noted by the ALJ himself (Tr. 14), is the issue of whether there has been an improvement

3

of the plaintiff's condition since the comparison point. This necessarily implies that information from the previous award decision must be available; in the Court's transcript, nonetheless, no materials pertaining to the previous period were included. The ability to view the Disability Determination Rationale form, or the psychological evaluation from 1990 (which was evidently in the record as of the time the Disability Hearing Officer examined the record as of April, 2003) would have been invaluable. Exactly why the exhibits were deleted from the file before it reached the Court is not clear.

Second, the Court notes in passing that the classification of several of categories of jobs as the plaintiff's "past relevant work" does not necessarily pass muster. Jobs which are held for only a short period of time can not be counted as one's past work. The plaintiff's job as a beltman, for example, lasted less than three months. (Tr. 65, 75). One security guard job lasted less than a full month. (Tr. 65). A job held for five months only was designated on several occasions as a "laborer" job which evidently involved a number of job duties (janitorial work, hauling supplies, and "nightwatching") together in uncertain portions. Greater questioning of the unrepresented plaintiff would have shed light on exactly how any job held more than a minimal amount should have been categorized.

Third, unmentioned anywhere in the ALJ's opinion (and unknown to the consultative examiner) is the fact that there were chronic compression fractures at T11-12 and a slight loss of height of the mid thoracic vertebra demonstrated on thoracic x-rays (Tr. 249), whereas the ALJ did see fit to mention that the claimant was not "cooperative" in obtaining an MRI of his back (Tr. 16). Moreover, a pain

4

management specialist, who saw the plaintiff in 2003 and 2004 noted tenderness and spasm along the spine and gave sacroliliac joint injections (Tr. 322-324), indicated that the plaintiff was not advised to drive heavy equipment since his medication could interfere with fine motor skills (Tr. 322), a treating source limitation opinion not addressed in the ALJ's decision and which itself would presumably eliminate the hauling aspects of the job the plaintiff had held for five months.[1]

It is against this backdrop that the Court examines the fact that Asher, having been previously found by the agency to have deficient IQ scores, appeared at the hearing unrepresented. The ALJ's other omissions pale in comparison to his advice to this claimant that:

> . . .All that being said, as I said, your hearing with or without an attorney is the same, it don't make any difference to me. I don't decide a case based upon whether or not somebody's sitting in a chair next to you representing you. In your particular case, because you're unrepresented, I have to do a little more work in the case. In other words, if there's some medical reports that are missing, I have to go out and get these reports for you and put them into your file. So, in essence, I'm doing the work that your attorney would normally do because they have to go out and do it for you and then they charge you. Well, if you're not represented, I've got to do the work for you. And so, as I said, the hearing is the same whether or not you're not represented. Now, do you have any questions about your right for representation?

(Tr. 329-330). The Court believes that such comments actively created a likelihood that the plaintiff would be confused about the advantages of having an attorney and would be likely to elicit a waiver of the right to representation. Further, the ALJ did

---

[1] See also Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004) concerning the need to address opinions from treating sources.

not properly develop certain critical aspects of the record, as required under <u>Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).

The case will be remanded for further consideration.

This the  23  day of February, 2006.

G. WIX UNTHANK,
Senior Judge